SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**John Paff v. Galloway Township** (A-88-15) (077692)

**Argued February 28, 2017 -- Decided June 20, 2017**

**Albin, J., writing for the Court.**

In this appeal, the Court addresses the scope of a municipality's obligation to disclose electronically stored information in accordance with the New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

On June 28, 2013, Plaintiff John Paff filed an OPRA request with Galloway Township's records custodian, seeking fields of information from all emails sent by the Township Clerk and the Township Police Chief between June 3 and 17, 2013. Paff asked the records custodian to provide him with an itemized list of the following categories of information in each email: "sender," "recipient," "date," and "subject." As a guide to the custodian, he attached, as a template, an email log that the Township had provided him in response to a similar records request six months earlier. On July 8, 2013, the Township Clerk denied the records request, explaining that "the [Government Records Council] and the courts have held that a custodian is not required to create new records in response to an OPRA request."

One month later, Paff filed a complaint and order to show cause in the Superior Court, Law Division, alleging that defendants Galloway Township and the Township Clerk (who is also the records custodian) violated both OPRA and the common law right of access. Paff sought an order compelling the Township to release the requested fields of information in the emails.

Beginning in late 2011, the Township provided email logs—similar to the one sought by Paff—in replying to specific OPRA requests. Because the Township did not maintain email logs on a regular basis, it had to generate them. At some point, the Clerk asked the Government Records Council (GRC) whether the Township could deny email log requests given that the Township did not maintain such "logs as a public record." With the caveat that its guidance did "not constitute legal advice or a final [agency] decision," the GRC responded as follows: "[B]oth the GRC and the courts have held that a custodian is not required to create new records in response to an OPRA request. If a record does not already exist, the custodian may deny access on the basis that no records responsive exist." Armed with this guidance, the Township ceased fulfilling requests for email logs, including the request by Paff.

The trial court ruled that the email logs requested by Paff were government records, as defined by OPRA, and therefore subject to disclosure. The court did not analyze Paff's records request under the common law right of access, likely because the OPRA analysis ended the inquiry.

A panel of the Appellate Division reversed. 444 N.J. Super. 495, 497, 505 (App. Div. 2016). The panel accorded "substantial deference" to the GRC's guidance given to Galloway Township, id. at 499, 503, and held that "OPRA does not require the creation of a new government record that does not exist at the time of a request, even if the information sought to be included in the new government record is stored or maintained electronically in other government records," id. at 504. The panel rejected Paff's argument that the common law right of access provided an alternative ground for approving his email log request. Id. at 506 n.9. The Court granted Paff's petition for certification. 227 N.J. 24 (2016).

**HELD**: The Appellate Division's overly constrictive reading of OPRA cannot be squared with the OPRA's objectives or statutory language. OPRA recognizes that government records will constitute not only paper documents, but also information electronically stored. The fields of information covering "sender," "recipient," "date," and "subject" in the emails sent by the Galloway Township Chief of Police and Clerk over a two-week period are government records under OPRA.

1. In 2001, the Legislature passed the Open Public Records Act (OPRA), L. 2001, c. 404 (codified at N.J.S.A. 47:1A-1 to -13), replacing the then-existing Right-to-Know Law, see L. 1963, c. 73, which had been enacted in 1963. In enacting OPRA, the Legislature intended to bring greater transparency to the operations of government and public officials. The Legislature declared in OPRA that "government records shall be readily accessible for . . . the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1. (pp. 14-16)

2. In keeping with that goal of transparency, OPRA broadly defines a "government record," making clear that government records consist of not only hard-copy books and paper documents housed in file cabinets or on shelves, but also "information stored or maintained electronically" in a database on a municipality's server. N.J.S.A. 47:1A-1.1. The Legislature apparently decided against defining government record as documents or files stored or maintained electronically. "Information" is the key word. By OPRA's language, information in electronic form, even if part of a larger document, is itself a government record. Thus, electronically stored information extracted from an email is not the creation of a new record or new information; it is a government record. (pp. 16-17)

3. N.J.S.A. 47:1A-5(d) allows for a service-fee charge when the request for a record requires "a substantial amount of manipulation or programming of information technology." Information in an email includes certain fields: the sender, recipient, date, and subject. Extracting that kind of information requires "programming of information technology," ibid., a function the Legislature clearly envisioned the municipality performing, provided that it has the means of doing so. Here, Galloway Township concedes that Paff's request does not require "a substantial amount of manipulation or programming of information technology." (pp 17-18)

4. Unlike the request in MAG Entertainment, LLC v. Division of Alcoholic Beverage Control, 375 N.J. Super. 534 (App. Div. 2005), Paff circumscribed his request to a two-week period and identified the discrete information he sought. The records custodian did not have to make a subjective judgment to determine the nature of the information covered by the request. Reliance on MAG is misplaced here. (pp. 19-21)

5. The Court does not accord "substantial deference" to the GRC's guidance given to the Galloway Township Clerk. The GRC cautioned that its guidance did "not constitute legal advice or a final [agency] decision." Additionally, OPRA specifically provides that "[a] decision of the [GRC] shall not have value as a precedent for any case initiated in Superior Court." N.J.S.A. 47:1A-7(e). Surely, if the Superior Court is to give no weight to a GRC decision, then informal guidance from the GRC can stand in no better position. Finally, the GRC did not analyze the facts of this case in light of the specific statutory provision at issue. (pp. 21-22)

6. The Township and amici have raised legitimate concerns whether the emails are subject to OPRA exceptions, exemptions, or redactions—issues not fully explored or discussed before the trial court. It may take only two to three minutes for an IT Specialist to make accessible fields of information from two weeks of emails; it will take considerably longer for the Township Clerk and Chief of Police to determine whether the requested information in each email may intrude on privacy rights or raise public-safety concerns. The Court offers no opinion on whether exceptions or exemptions apply to the information requested. If the Township wishes to contest the disclosure of the information on grounds other than those raised in this appeal, it must present evidence and arguments to the trial court, and Paff must be given the opportunity to respond. (pp. 22-24)

7. In light of its resolution of the OPRA claim, the Court has no need to address Paff's arguments that the common law right of access provides an alternative basis for disclosure of the information requested. The Court notes that its silence on this subject should not be construed as an endorsement of the Appellate Division's dismissal of Paff's common law claim. (pp. 24-25)

The judgment of the Appellate Division is **REVERSED**. The matter is **REMANDED** to the trial court for proceedings consistent with this opinion.

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.**

2

JOHN PAFF,

    Plaintiff-Appellant,

        v.

GALLOWAY TOWNSHIP and THALIA
C. KAY, in her capacity as
Municipal Clerk and Records
Custodian of Galloway
Township,

    Defendants-Respondents.

> Argued February 28, 2017 – Decided June 20, 2017
>
> On certification to the Superior Court,
> Appellate Division, whose opinion is
> reported at 444 N.J. Super. 495 (App. Div.
> 2016).
>
> Walter M. Luers argued the cause for
> appellant (Law Offices of Walter M. Luers
> and Furst & Lurie, attorneys; Walter M.
> Luers, Joshua M. Lurie, and Raymond M.
> Baldino, of counsel and on the briefs).
>
> Michael J. Fitzgerald argued the cause for
> respondents (Fitzgerald, McGroarty &
> Malinsky, attorneys).
>
> Thomas J. Cafferty argued the cause for
> amicus curiae New Jersey Press Association
> and Reporters Committee for Freedom of the
> Press (Gibbons, attorneys; Thomas J.
> Cafferty, Nomi I. Lowy, Lauren James-Weir,
> and Charlotte M. Howells, on the brief).
>
> Christopher J. Michie argued the cause for
> amicus curiae American Civil Liberties Union
> of New Jersey and the Electronic Frontier

Foundation (Clark Michie, attorneys; Christopher J. Michie, Bruce W. Clark, Edward L. Barocas, Jeanne M. LoCicero, and Iris Bromberg, on the brief).

Carl R. Woodward, III, argued the cause for amicus curiae New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys (Carella, Byrne, Cecchi, Olstein, Brody & Agnello, attorneys).

Vito A. Gagliardi, Jr., argued the cause for amicus curiae New Jersey State Association of Chiefs of Police (Porzio, Bromberg & Newman, attorneys; Vito A. Gagliardi, Jr., of counsel and on the brief, and Phillip C. Bauknight; on the brief).

JUSTICE ALBIN delivered the opinion of the Court.

In this appeal, we address the scope of a municipality's obligation to disclose electronically stored information in accordance with the New Jersey Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13.

Plaintiff John Paff filed a request with Galloway Township's records custodian for specific information in emails sent by the Township's Municipal Clerk and Chief of Police over a two-week period. From those emails, Paff sought only information contained within the following fields: "sender," "recipient," "date," and "subject." Paff did not request the contents of the emails.

The Township contended that only the emails -- not specific information embedded within them -- were "government records"

2

subject to disclosure under OPRA.  On that basis, the Township denied the records request.

The trial court ordered the production of the fields of information sought by Paff because OPRA defines a "government record" as "<u>information</u> stored or maintained electronically" by a municipality, quoting <u>N.J.S.A.</u> 47:1A-1.1 (emphasis added).  A panel of the Appellate Division reversed, concluding that OPRA required only the production of the emails, not information electronically stored within them.

We now hold that the Appellate Division's overly constrictive reading of OPRA cannot be squared with OPRA's objectives or statutory language.  The Legislature has instructed that government records must be readily accessible to our citizenry, subject to certain exceptions, and that any limitation on the "public's right of access" must be construed in favor of access.  <u>N.J.S.A.</u> 47:1A-1.  In passing OPRA, and replacing its predecessor statute, the Legislature framed a statutory scheme that reflects the profound changes in communication and storage of information in recent times.  OPRA recognizes that government records will constitute not only paper documents, but also information electronically stored.  To that end, <u>N.J.S.A.</u> 47:1A-1.1 provides that a government record includes "information stored or maintained electronically."  The information sought by Paff was clearly defined and

3

circumscribed; was stored electronically; and, by the Township's own admission, could have been produced within minutes.

The Appellate Division erred in finding that the government record is the email itself and not the easily accessible fields of information that were maintained electronically.  We therefore reverse.  We remand to the trial court to determine whether any of the requested information falls within any exception or exemption to OPRA's disclosure requirement.

I.

A.

On June 28, 2013, Paff filed an OPRA request with Galloway Township's records custodian, seeking fields of information from all emails sent by the Township Clerk and the Township Police Chief between June 3 and 17, 2013.  Paff asked the records custodian to provide him with an itemized list of the following categories of information in each email:  "sender," "recipient," "date," and "subject."

As a guide to the custodian, he attached, as a template, an email log that the Township had provided him in response to a similar records request six months earlier.  Four fields of information were set forth in the template:

| Sender | Recipient | Date | Subject |
|--------|-----------|------|---------|
|        |           |      |         |
|        |           |      |         |
|        |           |      |         |

4

On July 8, 2013, Thalia C. Kay, the Township Clerk, notified Paff that the Township "is unable to provide logs on email communication" and "[t]herefore, no records responsive exist." (emphasis added). In denying the records request, the Clerk explained that "the [Government Records Council] and the courts have held that a custodian is not required to create new records in response to an OPRA request."

One month later, Paff filed a complaint and order to show cause in the Superior Court, Law Division, alleging that defendants Galloway Township and the Township Clerk (who is also the records custodian) violated both OPRA and the common law right of access. Paff sought an order compelling the Township to release the requested fields of information in the emails.

B.

During a three-day hearing, the trial court took testimony from Paff, the Township Clerk, and the Township's Information Technology (IT) Specialist, Eric E. McCarthy, and reviewed each of their certifications. The court also reviewed a certification from Captain Christopher Doyle of the Galloway Township Police Department. The facts gleaned from the record are largely undisputed.

Beginning in late 2011, the Township provided email logs -- similar to the one sought by Paff -- in replying to specific OPRA requests. Because the Township did not maintain email logs

5

on a regular basis, it had to generate them. Until it discontinued the practice one year later, the Township had released email logs, including one to Paff, in response to approximately 100 records requests.

The Township had the technological capacity to provide the fields of information sought by Paff and could have done so by expending two to three minutes of its IT Specialist's time. The Township conceded that Paff's request did not impose a significant technological burden.

At some point, the Clerk asked the Government Records Council (GRC) whether the Township could deny email log requests given that the Township did not maintain such "logs as a public record" and was not required to create such records.[1] With the caveat that its guidance did "not constitute legal advice or a final [agency] decision," the GRC responded as follows: "[B]oth the GRC and the courts have held that a custodian is not required to create new records in response to an OPRA request. If a record does not already exist, the custodian may deny access on the basis that no records responsive exist." Armed with this guidance, the Township ceased fulfilling requests for email logs, including the request by Paff.

---

[1] The GRC is an administrative agency created to offer guidance on OPRA compliance and to adjudicate disputes regarding access to government records. See N.J.S.A. 47:1A-7(b); N.J.A.C. 5:105-1.5.

In a certification, Galloway Township Police Captain Christopher Doyle -- the Department's Deputy Custodian for OPRA requests -- averred that the "Department ha[d] the technical capability to create a log of emails sent or received by [its] members" but had never done so before "in response to an OPRA request." Captain Doyle feared that the type of email log sought by Paff "would have a significant potential detriment to the Department's ability to protect confidential information, ongoing investigations and investigatory techniques." He also opined that the dates selected by Paff were not "random" and were related "to an internal investigation within the Township Police Department." Captain Doyle warned that imposing on the Department the obligation "to create and then redact logs of e-mails would not only be extremely difficult," but also "impractical."

In his testimony, Paff explained that the Township's reversal of its previous policy of making email logs accessible prompted his OPRA request. He stated that his motive was simply to further "the public's right to know" and "to try to keep OPRA from getting whittled away." He asserted that he could not recall why he chose the dates embraced within his OPRA request and that he may have selected the dates randomly, solely for the purpose of testing the new policy.

C.

7

The trial court ruled that the email logs requested by Paff were government records, as defined by OPRA, and therefore subject to disclosure. The court observed that OPRA broadly defines "government record" as including "information stored or maintained electronically," quoting N.J.S.A. 47:1A-1.1. The court concluded that a "list of emails" that afforded only "sender/receiver/date/[subject]" information over a two-week period was "information" falling within the definition of "government record." In reaching that conclusion, the court made the following factual findings: Paff's request for an email log was "carefully circumscribed" and the information sought was "identified with reasonable clarity"; the Township has the technical ability to prepare an email log; and despite the request's apparent breadth, the Township would not incur "any significant burden associated with producing the email log." The court evidently did not give credence to the Township's "concerns about disruption of police investigations" based on the limited fields of information requested.

The court did not analyze Paff's records request under the common law right of access, likely because the OPRA analysis ended the inquiry.[2] The court stayed its order and award of

_____

[2] In his initial records request with the Township Clerk and in his complaint, Paff claimed that disclosure of the email logs was required under the common law right of access.

8

attorney's fees to Paff pending appeal.

### D.

A panel of the Appellate Division reversed the trial court's order compelling Galloway Township to provide the email logs to Paff. Paff v. Galloway Township, 444 N.J. Super. 495, 497, 505 (App. Div. 2016). The panel determined that OPRA requires public agencies to provide access to government records, not to create them. Id. at 502. According to the panel, the plain language of "OPRA only allows requests for records, not requests for information." Id. at 503 (quoting Bent v. Twp. of Stafford Police Dep't, 381 N.J. Super. 30, 37 (App. Div. 2005)). In support of that position, the panel accorded "substantial deference" to the Government Records Council's guidance given to Galloway Township. See id. at 499, 503.

The panel held that "OPRA does not require the creation of a new government record that does not exist at the time of a request, even if the information sought to be included in the new government record is stored or maintained electronically in other government records." Id. at 504. The panel reasoned that "[w]hile a computer may be able to create an email log quickly, it is still creating a new government record, which is not required under OPRA." Id. at 505.

Additionally, although the panel conceded that the request

9

for an email log in this case "might not present a burdensome task," it envisioned "requests of a similar nature that would present a serious burden."  Id. at 505-06.  In the panel's view, any obligation imposed on "governmental entities to produce lists and compilations that do not otherwise exist" must come from the Legislature.  Id. at 506.

Last, based on Paff's inability to "recall any reason for making his request [or] choosing the specific dates in his request," the panel rejected Paff's argument that the common law right of access provided an alternative ground for approving his email log request.  Id. at 506 n.9.

We granted Paff's petition for certification.  Paff v. Galloway Township, 227 N.J. 24 (2016).  We also granted requests of the following organizations to participate as amici curiae: American Civil Liberties Union of New Jersey, the Electronic Frontier Foundation, New Jersey Press Association, Reporters Committee for Freedom of the Press, New Jersey State Association of Chiefs of Police, New Jersey State League of Municipalities, and New Jersey Institute of Local Government Attorneys.

II.

A.

Paff contends that the Appellate Division erred by failing to recognize that the Legislature, in enacting OPRA, broadly defined government records to include not only paper documents

10

and files, but also computer-generated "information stored or maintained electronically." According to Paff, for OPRA purposes, electronically stored information is an existing record, and therefore extracting digital information, such as a list of the "sender," "recipient," "date," and "subject" fields from emails, is not the creation of a new record. Paff notes that OPRA takes into account the type of request he made by allowing public agencies to charge a fee for a "substantial amount of manipulation or programming of information technology," quoting N.J.S.A. 47:1A-5(d). He insists, "it is critical that citizens have access to [government] records on terms that reflect the realities of technology."

Paff also argues that the Appellate Division disregarded OPRA's command that a GRC decision shall have no precedential value in a Superior Court case, citing N.J.S.A. 47:1A-7(e). Last, Paff states that the Appellate Division, in perfunctorily rejecting his common law right to access claim, failed to engage in the required balancing of interests of both the requestor and the Township.

Amici American Civil Liberties Union of New Jersey, the Electronic Frontier Foundation, New Jersey Press Association, and Reporters Committee for Freedom of the Press, collectively or individually, maintain that the Appellate Division failed to grasp OPRA's intent to make electronically stored information

11

easily accessible by harnessing modern technology.[3]  Amici submit that OPRA deems both paper documents and "information" stored in electronic form to be government records.  They also assert that information extracted from a computer database -- whether called a list, a log, or a response to a request -- is not new information or a new record, but a government record, as defined by OPRA.  Finally, amici note that whether the requested information sought is subject to non-disclosure based on an OPRA exception or exemption has no bearing on whether electronic information constitutes a government record.

B.

Galloway Township, including the Township Clerk, acknowledges that the actual emails at issue are government records subject to disclosure in electronic or paper form.  The Township claims, however, that OPRA does not require the Township to create records by extracting and compiling information from those emails in the form of a list.  The Township contends that because it does not maintain an email list limited to the fields of "sender," "recipient," "date," and "subject," there is no existing government record to disclose.

The Township also urges that, in deciding whether

---

[3] American Civil Liberties Union of New Jersey and the Electronic Frontier Foundation filed a joint brief, and New Jersey Press Association and Reporters Committee for Freedom of the Press filed a separate joint brief.

disclosure of the requested records is statutorily required, this Court consider the privacy and confidentiality concerns raised by compelling disclosure of lists of emails that may touch on communications between members of the public and government officials. Last, the Township highlights the difficulties government officials will face if email lists must be prepared and released, positing that officials will have to determine whether each individual email contains privileged or confidential information subject to redaction.

Amici New Jersey State Association of Chiefs of Police, New Jersey State League of Municipalities, and New Jersey Institute of Local Government Attorneys, collectively or individually, insist that requiring law enforcement officials to create email logs will "compromise the sensitive investigatory techniques of police departments" and "irreparably damage the fluid and consistent exchange of confidential information internally."[4] They also posit that citizens -- fearing unwarranted invasion of their privacy or identity theft -- might be discouraged "from using the internet to communicate with their government." Additionally, they express concern that records custodians are not equipped to decide whether confidential information must be

---

[4] New Jersey State Association of Chiefs of Police filed a brief, and New Jersey State League of Municipalities and New Jersey Institute of Local Government Attorneys filed a separate joint brief.

redacted from the vast number of emails generated by the Police Department and other municipal officials.

III.

The issue in this case is simply one of statutory interpretation. OPRA defines "government record" to include "information stored or maintained electronically" by a municipality. N.J.S.A. 47:1A-1.1. We must decide whether Paff's request for fields of information that list the sender, recipient, date, and subject of emails sent by Galloway Township's Chief of Police and Clerk over a two-week period is a request for government records within the intendment of OPRA.

"In construing the meaning of a statute, our review is de novo," and therefore we owe no deference to the interpretative conclusions reached by either the trial court or the Appellate Division. Murray v. Plainfield Rescue Squad, 210 N.J. 581, 584 (2012). The statutory language, as always, is the best indicator of legislative intent, DiProspero v. Penn, 183 N.J. 477, 492 (2005), but here, too, the historical background that impelled the Legislature to pass OPRA sheds a clear light on its intent.

A.

In 2001, the Legislature passed the Open Public Records Act (OPRA), L. 2001, c. 404 (codified at N.J.S.A. 47:1A-1 to -13), replacing the then-existing Right-to-Know Law, see L. 1963, c.

14

73, which had been enacted in 1963.  The thirty-eight-year reign of the Right-to-Know Law did not keep pace with the vast technological advances that changed the way citizens and public officials communicate and store information.  See Issues Dealing with Public Access to Government Records:  Hearing on S.B. 161, 351, 573, 866 Before the S. Judiciary Comm. 18-19 (2000) (statement of Sen. Byron M. Baer) (remarking on "antiquated" nature of Right-to-Know Law in "information age" and need for proposed OPRA legislation to "tie in with the Internet").

Under the Right-to-Know Law, "the Legislature intended to circumscribe the public's right . . . to receive copies of public records in computer form."  Higg-A-Rella, Inc. v. County of Essex, 141 N.J. 35, 45 (1995).  To that end, the Right-to-Know Law was so "narrowly drawn" that it did "not entitle citizens to obtain computer copies."  Ibid.  Thus, "the copying of records maintained by a system of data processing or image processing [was] deemed to refer to the right to receive printed copies of such records" only.  L. 1994, c. 140, § 8 (emphasis added).

In enacting OPRA, the Legislature intended to bring greater transparency to the operations of government and public officials.  The Legislature declared in OPRA that "government records shall be readily accessible for . . . the citizens of this State, with certain exceptions, for the protection of the

15

public interest, and any limitations on the right of access . . . shall be construed in favor of the public's right of access." N.J.S.A. 47:1A-1.  In keeping with that goal of transparency, OPRA broadly defines a "government record" as:

> [A]ny paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof.
>
> [N.J.S.A. 47:1A-1.1.][5]

OPRA makes clear that government records consist of not only hard-copy books and paper documents housed in file cabinets or on shelves, but also "information stored or maintained electronically" in a database on a municipality's server.  Ibid. The Legislature, pointedly, declined to limit accessibility to electronic records by not adopting a more restrictive formulation of government record.  The Legislature apparently decided against defining government record as documents or files stored or maintained electronically.  "Information" is the key word.

---

[5] N.J.S.A. 47:1A-1.1 contains an extensive list of exceptions to the broad definition of "government record."  The exceptions consist of records that are "deemed to be confidential" and therefore exempt from disclosure.  Ibid.

One definition of "information" is "facts or figures ready for communication." Webster's Third New International Dictionary 1160 (3d ed. 1981); see also Merriam-Webster's Collegiate Dictionary 641 (11th ed. 2004) (defining information as "knowledge," "facts," and "data"). We must presume that the Legislature intended the words that it chose and the plain and ordinary meaning ascribed to those words. DiProspero, supra, 183 N.J. at 492.

A document is nothing more than a compilation of information -- discrete facts and data. By OPRA's language, information in electronic form, even if part of a larger document, is itself a government record. Thus, electronically stored information extracted from an email is not the creation of a new record or new information; it is a government record.

This logical conclusion flows directly from OPRA's language and related provisions in the statutory scheme.[6] As noted earlier, OPRA's definition of "government record" indicates that electronically stored information that is part of a larger

---

[6] The conclusion that electronically stored information is a government record is also supported by the interpretation given to the similarly worded Pennsylvania Right-to-Know Law. See 65 Pa. Cons. Stat. § 67.102 (defining "record" as "information stored or maintained electronically"). Pennsylvania courts have held that extracting information from an electronic database "is not the creation of a record." See, e.g., Commonwealth of Pa., Dep't of Envtl. Prot. v. Cole, 52 A.3d 541, 549 (Pa. Commw. Ct. 2012).

17

document is a government record.  Other OPRA provisions distinguish between paper records and records in electronic form, placing in context the different treatment given to electronic information.  N.J.S.A. 47:1A-5(d) provides that a records requestor is entitled to a government record "in the medium requested if the public agency maintains the record in that medium."  Thus, if the record is maintained in an electronic medium, the requestor is entitled to the document in electronic form.  If the record is not maintained "in the medium requested," the custodian must "convert the record to the medium requested or provide a copy in some other meaningful medium." Ibid.

That provision also allows for a service-fee charge when the request for a record requires "a substantial amount of manipulation or programming of information technology."  Ibid. Obviously, providing access to or copies of computer-generated information involves challenges that are not present in the rote copying of paper documents.

Information in an email includes certain fields:  the sender, recipient, date, and subject.  Extracting that kind of information requires "programming of information technology," ibid., a function the Legislature clearly envisioned the municipality performing, provided that it has the means of doing so.  Here, Galloway Township concedes that Paff's request does

18

not require "a substantial amount of manipulation or programming of information technology," which would have entitled the Township to a service charge. See ibid. The Township's IT Specialist testified that providing the fields of information requested is not a burden and would consume no more than two to three minutes of time. Retrieving paper documents from a storage facility and copying them undoubtedly would take more time and impose greater costs. To that extent, modern technology has lessened some of the burdens on municipal officials.

The Township does not dispute that the emails requested by Paff are government records. Instead, it argues that Paff can have the entirety of those emails or nothing. According to the Township, Paff is not entitled to fields of information -- such as "sender," "recipient," "date," and "subject" -- divorced from the emails themselves. To support that position, the Township does not rest on the language of the statute but rather on prior Appellate Division decisions that did not address the electronic medium and therefore are inapposite. The Appellate Division in this case made the same error.

To advance its argument, the Township relies heavily on MAG Entertainment, LLC v. Division of Alcoholic Beverage Control, 375 N.J. Super. 534 (App. Div. 2005), a case not comparable to the one before us. In MAG, the Division of Alcoholic Beverage

19

Control (ABC) instituted administrative proceedings to revoke MAG's license for allegedly selling alcohol to an intoxicated person and for alleged acts of lewdness by its employees. Id. at 539. MAG filed an OPRA request with the ABC for "all documents or records" involving similar enforcement actions. Id. at 539-40 (emphasis added). "[T]he request failed to identify with any specificity or particularity the governmental records sought." Id. at 549. Given this unrestricted records request, the Appellate Division sensibly stated that OPRA did not countenance "[w]holesale requests for general information to be analyzed, collated and compiled by the responding government entity" or "open-ended searches of an agency's files." Ibid.

A records request must be well defined so that the custodian knows precisely what records are sought. The request should not require the records custodian to undertake a subjective analysis to understand the nature of the request. Seeking particular information from the custodian is permissible; expecting the custodian to do research is not.

Unlike the request in MAG, Paff circumscribed his request to a two-week period and identified the discrete information he sought. The records custodian did not have to make a subjective judgment to determine the nature of the information covered by the request. The custodian simply had to search for -- not research the identity of -- the records requested. Therefore,

20

the Township's, as well as the Appellate Division's, reliance on MAG is misplaced here.

With respect to electronically stored information by a municipality or other public entity, we reject the Appellate Division's statement that "OPRA only allows requests for records, not requests for information." Paff, supra, 444 N.J. Super. at 503 (quoting Bent, supra, 381 N.J. Super. at 37). That position cannot be squared with OPRA's plain language or its objectives in dealing with electronically stored information.

### B.

We do not accord "substantial deference" to the GRC's guidance given to the Galloway Township Clerk. See Paff, supra, 444 N.J. Super. at 503. That guidance merely stated in boilerplate language that the Township was not "required to create new records in response to an OPRA request." Significantly, the GRC cautioned that its guidance did "not constitute legal advice or a final [agency] decision." Additionally, OPRA specifically provides that "[a] decision of the [GRC] shall not have value as a precedent for any case initiated in Superior Court." N.J.S.A. 47:1A-7(e). That statutory provision clearly indicates that in proceedings initiated in Superior Court concerning an OPRA request, GRC

21

decisions are not entitled to any deference.[7]  Surely, if the Superior Court is to give no weight to a GRC decision, then informal guidance from the GRC can stand in no better position. Finally, we add that the GRC did not analyze the facts of this case in light of the specific statutory provision at issue.

C.

In conclusion, the fields of information covering "sender," "recipient," "date," and "subject" in the emails sent by the Galloway Township Chief of Police and Clerk over a two-week period are government records under OPRA.

IV.

Our finding that the fields of information in the requested emails are government records does not end the inquiry.  The Township and amici have raised legitimate concerns whether the emails are subject to OPRA exceptions, exemptions, or redactions -- issues not fully explored or discussed before the trial court.  The Township fears that wholesale disclosure of the requested fields of information from the emails may compromise investigations or investigatory techniques, thwart the internal

---

[7] GRC decisions obviously will have precedential value in matters brought before the GRC.  On appeal from an adjudicatory proceeding in which the GRC renders a final agency decision, a GRC determination will be entitled to deference before the Appellate Division.  See McGee v. Township of East Amwell, 416 N.J. Super. 602, 612-13 (App. Div. 2010) (recognizing GRC's authority to interpret and apply OPRA and endorsing "deferential standard" of appellate review of GRC decisions).

22

exchange of confidential information, or lead to the release of citizens' email addresses causing an unwarranted invasion of their privacy.

An informed citizenry is essential to a well-functioning democracy. Cf. Mason v. City of Hoboken, 196 N.J. 51, 64 (2008). Clearly, technology has opened the door to unparalleled transparency of government operations. OPRA recognizes, however, that technology now imposes burdens on public officials. It may take only two to three minutes for an IT Specialist to make accessible fields of information from two weeks of emails; it will take considerably longer for the Township Clerk and Chief of Police to determine whether the requested information in each email may intrude on privacy rights or raise public-safety concerns. The potential issues raised by the Township must be addressed.

OPRA carves out thirty exceptions to the definition of government record, N.J.S.A. 47:1A-1.1, and lists multiple exemptions to the right to access. For example, OPRA exempts from disclosure any records that "pertain to an investigation in progress by any public agency" if disclosure of such records would "be inimical to the public interest." N.J.S.A. 47:1A-3(a). OPRA also authorizes a public agency to deny a records request if granting access "would substantially disrupt agency operations." N.J.S.A. 47:1A-5(g). However, before doing so,

23

the agency must first attempt "to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency." Ibid.

OPRA also permits redaction of parts of government records that are not subject to disclosure. See ibid.; see also N.J.S.A. 47:1A-5(a). Additionally, the Legislature declared in OPRA that public agencies have "a responsibility and an obligation to safeguard from public access a citizen's personal information . . . when disclosure thereof would violate the citizen's reasonable expectation of privacy." N.J.S.A. 47:1A-1. This is by no means an exhaustive list of OPRA's exceptions and exemptions.

This Court is not the proper forum to resolve whether exceptions or exemptions apply to the information requested, and we offer no opinion on the issue. If the Township wishes to contest the disclosure of the information on grounds other than those raised in this appeal, it must present evidence and arguments to the trial court, and Paff must be given the opportunity to respond. The Township, however, carries the burden of establishing a statutory basis for denying Paff's records request. N.J.S.A. 47:1A-6.

Last, in light of our resolution of the OPRA claim, we have no need to address Paff's arguments that the common law right of access provides an alternative basis for disclosure of the

24

information requested.  Our silence on this subject should not be construed as an endorsement of the Appellate Division's dismissal of Paff's common law claim.  See Paff, supra, 444 N.J. Super. at 506 n.9.

V.

For the reasons expressed, we reverse the judgment of the Appellate Division.  We conclude that the requested fields of information from the identified emails constitute "information stored or maintained electronically," N.J.S.A. 47:1A-1.1, and are therefore "government records" under OPRA.  The trial court must determine whether any of OPRA's exceptions or exemptions bar access to the requested information or whether any redactions are necessary.  We remand for proceedings consistent with this opinion.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and TIMPONE join in JUSTICE ALBIN's opinion.