**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3278-22

ALONZO HILL, currently
incarcerated at New Jersey State
Prison in Trenton, New Jersey,

     Plaintiff-Appellant,

v.

THE NEW JERSEY DEPARTMENT
OF CORRECTIONS, public agency
formed under the laws of the State
of New Jersey, and JOHN FALVEY,
in his official capacity as Custodian
of Records for the New Jersey
Department of Corrections,

     Defendants-Respondents.

_____

Submitted October 22, 2024 – Decided November 13, 2024

Before Judges Gooden Brown and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2137-22.

Rutgers Constitutional Rights Clinic Center for Law & Justice, attorneys for appellant (Frederick Davis, Kristine Baffo, Jonathan Nendze, Hafsa Oksuz, Merissa

Shebell, Lucy Sprague, and Gabe Waldman, law students appearing pursuant to Rule 1:21-3(b), and Ronald K. Chen, Matthew Harm and Max Hermann, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondents (Sara M. Gregory, Assistant Attorney General, of counsel; Dana L. Paolillo, Deputy Attorney General, on the brief).

PER CURIAM

This appeal stems from an October 13, 2022 request under the Open Public Records Act (OPRA) made by plaintiff Alonzo Hill, an inmate at New Jersey State Prison (NJSP), to defendants the New Jersey Department of Corrections (DOC) and John Falvey, Assistant Division Director for the DOC (Falvey),[1] seeking (A) the Legal Access Plan currently in effect at NJSP; (B) all non-confidential internal management procedures and other policies and orders pursuant to six different Executive Orders; and (C) non-confidential COVID-19 policies that apply to meetings of incarcerated persons at NJSP.[2] Defendants provided a document in response to the Part A request, and denied the remainder of the requests. Plaintiff filed a complaint and order to show cause (OTSC)

---

[1] We collectively refer to the DOC and Falvey as "defendants."

[2] We abbreviate plaintiff's OPRA request as the "Part A request," "Part B request" and "Part C request."

challenging defendants' response, which was granted in part and denied in part by a May 26, 2023 trial court order and written decision.

After thoroughly reviewing the record under the lens of prevailing law, we reverse and vacate the trial court's decision declaring defendants violated OPRA through its response to plaintiff's Part A request. We affirm the remainder of the trial court's decision since plaintiff's Part B and C requests seek documents that are exempt from public access under OPRA and would require the defendants to conduct research and make subjective determinations in order to comply.

I.

We glean the salient facts from the record on plaintiff's OTSC. On October 13, 2022, plaintiff sent an OPRA request to the DOC, through counsel, seeking the following:

> [A.] The Legal Access Plan currently in effect at NJSP.
>
> [B.] All non-confidential internal management procedures (IMP), standard operating procedures (SOP), and other policies, orders, and/or directives of the [DOC] enacted pursuant to Governor Murphy's Executive Orders numbered: 242, 244, 280, 281, 288, 292 that apply to NJSP.
>
> [C.] Any other non-confidential policies, orders, and/or directives concerning social distancing or COVID-19-

3

related policies that apply to meetings and gatherings of incarcerated people at NJSP.

Plaintiff qualified his request with the following instruction to the DOC records custodian: "Please DO NOT include policies solely regarding vaccination, masking, and/or testing for [DOC] employees."

On October 27, Falvey responded to plaintiff's request. In response to plaintiff's Part A request, defendants provided plaintiff with a four-page document entitled the "Legal Access Program." In response to plaintiff's Part B and C requests, defendants explained plaintiff's requests are invalid and improper and cannot be fulfilled as they do not adequately identify a particular government record(s) sought." To support its denial, defendants cited to MAG Ent., LLC v. Div. of Alcoholic Beverage Control, 375 N.J. Super. 534 (App. Div. 2005), and Bent v. Twp. of Stafford Police Dep't, Custodian of Recs., 381 N.J. Super. 30 (App. Div. 2005).

On December 8, plaintiff filed a verified complaint and OTSC naming the DOC and Falvey as defendants and demanding the following judgment:

(a)    Declaring [defendants] in violation of [OPRA];

(b)    Compelling [defendants] to immediately provide copies of the requested records;

4

(c)     Maintaining jurisdiction over this action until [defendants] come into compliance with the court's directives and orders;

(d)     Granting attorney's fees and cost of suit pursuant to N.J.S.A. 47:1A-6; and

(e)     Granting such other relief as this court may deem just and proper.

Defendants supported their opposition to plaintiff's OTSC with certifications from Falvey, Major Craig Sears, a Correctional Police Major at NJSP (Sears), and Acting Assistant Commissioner for the Division of Operations in the DOC, Erin Nardelli (Nardelli).  Falvey stated "the DOC's regulations refer to a 'Legal Access Plan' [and] the document styled 'Legal Access Program' is the current Legal Access Plan, and is publicly posted." Falvey maintained each prison facility has copies of the inmate handbook containing the information provided in the Legal Access Program setting forth how incarcerated persons can access legal services.  Falvey also explained "the [DOC] has a confidential IMP which has been titled 'Inmate Legal Access.'"

Falvey articulated that the Legal Access Program document contains information about the Inmate Legal Association, the law library, and legal supplies that an incarcerated person may request, while the Inmate Legal Access

IMP is a confidential document for facility staff which is exempt from disclosure under OPRA.

In response to plaintiff's Part B request, Falvey conducted a search and "identified approximately 500 IMPs created and revised by the [DOC] during that time." Falvey set forth that "there is no additional way of locating responsive documents other than reviewing the contents of each IMP issued during that time period and comparing it to the [Executive Order] listed in the OPRA request."

Sears also submitted a certification addressing plaintiff's Part A and B requests. Sears is responsible for security at the facility and certified "[t]he IMP titled Inmate Legal Access is a confidential IMP that is designated for the sole use of custody staff setting forth the processes and procedures that the Correctional Police staff is required to utilize when implementing the Legal Access Program." Such procedures include, for example, "how and when inmates are moved when participating in the Legal Access Program, whether inmates are being moved to the Library or [whether] paralegals are visiting the different units." Additionally, Sears explained the Inmate Legal Access IMP contains "specific directives with step-by-step instructions on what to do or how to handle certain situations." In his certification, Sears explained these

6

procedures ensure the orderly running of the facility, and if this information was provided to an incarcerated person, it would create "the potential for an inmate(s) to be able to circumvent lawful actions by the Correctional Police and develop counter measures to disrupt their responses."

Nardelli addressed the DOC's response to Part C of plaintiff's request regarding COVID-19 related documents. Nardelli certified that "between March 2020 and present, the DOC . . . implemented hundreds of formal and informal policies, directives, and guidance in response to [COVID-19]." The DOC "issued general policies, directives, and guidance that would be implemented Statewide across all institutions and Residential Community Release Programs under DOC supervision," with each individual facility also "implementing any necessary additional guidance and policies specific to that facility to comply with general guidance provided by the DOC." The policies, directives, and guidance "widely ranged in subject," and included topics such as staffing procedures, inmate activities, and healthcare.

Nardelli also explained "the DOC compiled the statewide DOC policies, directives, and guidance which amounts to several hundred, if not, thousands of pages of documents" and that

> locating documents within those compiled documents
> specific to 'social distancing or COVID-19 related

policies that apply to meetings and gatherings of incarcerated people at NJSP' would require a subjective review of each and every page of these hundreds, if not thousands, of pages to determine whether it addresses those issues named.

In an effort to be cooperative, defendants included an email chain captioned "COVID Mitigation Strategies" directed to certain staff to combat the rise in positive COVID-19 cases with its opposition brief. Defendants proffered this document as one of the policies the DOC enacted regarding COVID-19 that apply to meetings and gatherings of incarcerated people at NJSP.

On May 26, 2023, the trial court entered an order accompanied by a written decision ruling that defendants violated OPRA as to its response to plaintiff's Part A request and denying plaintiff's application to compel defendants to comply with Parts B and C, along with plaintiff's request for attorney's fees. As it relates to plaintiff's Part A request, the trial court found the defendants violated OPRA because defendants' "response did not indicate that the confidentiality exemption applies to [plaintiff's Part A request]." The trial court also reasoned defendants "failed to indicate in their response the specific basis for their inability to provide the exact document that [plaintiff] requested. As a result, [defendants] violated OPRA."

A-3278-22

The trial court ruled defendants properly denied plaintiff's Part B and C requests because they would be required to research and "to evaluate and use their subjective judgment to determine which documents were promulgated under the specified Executive Orders and which documents concerned [COVID-19 related] social distancing [procedures]." The trial court found an award of attorney's fees to plaintiff was not authorized under OPRA. Plaintiff filed a notice of appeal.

II.

Determinations "about the applicability of OPRA and its exemptions are legal conclusions and are therefore subject to de novo review." Simmons v. Mercado, 247 N.J. 24, 38 (2021) (citing Matter of New Jersey Firemen's Ass'n Obligation to Provide Relief Applications Under Open Pub. Recs. Act, 230 N.J. 258, 273-74 (2017)). Thus, "we owe no deference to the interpretive conclusions reached by . . . the trial court[.]" Id. at 38 (citing Paff v. Galloway Township, 229 N.J. 340, 351 (2017)).

III.

After our de novo review, we are unpersuaded that defendants violated OPRA and that plaintiff is a prevailing party entitled to an award of attorney's fees and costs.

A-3278-22

"The Legislature passed OPRA in 2001 to replace the then-existing Right to Know Law, L. 1963, c. 73, which did not keep pace with the vast technological advances that changed the ways citizens and public officials communicate and store information."  Ass'n for Governmental Resp., Ethics & Transparency v. Borough of Mantoloking, 478 N.J. Super. 470, 485 (App. Div. 2024) (internal quotations omitted).  "OPRA's purpose is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process."  Conley v. New Jersey Dep't of Corr., 452 N.J. Super. 605, 610 (App. Div. 2018) (quoting Mason v. City of Hoboken, 196 N.J. 51, 64 (2008)).

OPRA as promulgated in N.J.S.A. 47:1A-1 is explicit in its policy objectives:

> [G]overnment records shall be readily accessible for inspection, copying, or examination by the citizens of this State, with certain exceptions, for the protection of the public interest, and any limitations on the right of access accorded by P.L.1963, c. 73 (C.47:1A-1) as amended and supplemented, shall be construed in favor of the public's right of access . . . .

"To achieve its purpose, OPRA broadly [defines] government records."  Ass'n for Governmental Resp., Ethics & Transparency, 478 N.J. Super. at 486.  The following are considered "government records" subject to public access under OPRA:

[A]ny paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, information stored or maintained electronically or by sound-recording or in a similar device, or any copy thereof, that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency or authority of the State or of any political subdivision thereof, including subordinate boards thereof, or that has been received in the course of his or its official business by any such officer, commission, agency, or authority of the State or of any political subdivision thereof, including subordinate boards thereof . . . .

[N.J.S.A. 47:1A-1.1.]

Although OPRA's broad objective centers around increasing transparency, the Legislature did not intend for citizens to have unfettered access to government records. Conley, 452 N.J. Super. at 610; see also Bozzi v. City of Jersey City, 248 N.J. 274, 284 (2021) ("The public's right to disclosure, while broad, is not unlimited."). The Legislature recognized the limitation on disclosure through exemptions under OPRA. See N.J.S.A. 47:1A-1.

In its written decision, the trial court noted: "[t]he public right of access under OPRA is subject to . . . limitations," the first of which is that the document requested must be a "government record" as defined in N.J.S.A. 47:1A-1.1, and second, it must also not be subject to an exemption by any other federal or state statutory provisions.

According to the plain text of N.J.S.A. 47:1A-9(a), as recently recognized by the Court, OPRA creates an exemption for an administrative agency's regulations that exclude, or exempt, certain records from public access. N.J.S.A. 47:1A-9, titled "Construction with other laws," provides that context, and states in pertinent part:

> The provisions of this act, P.L.2001, c. 404 (C.47:1A-5 et seq.), shall not abrogate any exemption of a public record or government record from public access heretofore made pursuant to P.L.1963, c. 73 (C.47:1A-1, et seq.); any other statute; resolution of either or both Houses of the Legislature; regulation promulgated under the authority of any statute or Executive Order of the Governor; Executive Order of the Governor; Rules of Court; any federal law; federal regulation; or federal order.

The exemptions to disclosure of a government record are not limited to those circumscribed in OPRA as the statute itself incorporates confidentiality provisions and limitations on disclosure promulgated in other laws. The Court recognized that N.J.S.A. 47:1A-9(a) "provides that OPRA 'shall not abrogate or erode' any grant of confidentiality established or recognized by statute." Gannett Satellite Info. Network, LLC, 254 N.J. at 251; see also Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 338 (2018) ("OPRA also exempts from disclosure any information that is protected by any other state or federal statute, regulation, or executive order.").

12

Based on prior precedent from our Supreme Court, we are unpersuaded that the term "heretofore" contained in N.J.S.A. 47:1A-9(a) should be given the construction advocated by plaintiff. The statutory framework in addition to the plain language of (a), makes the disclosure of government records subject to exemptions promulgated under OPRA and other laws, including the DOC's regulations. See Rivera v. Union Cnty. Prosecutor's Off., 250 N.J. 124, 141 (2022) (concluding that to interpret a statute, courts must start with the plain text of the law and "give words their generally accepted meaning . . . if the law is clear, our analysis is complete").

The DOC's rule-making authority stems from the Department of Corrections Act of 1976, N.J.S.A. 30:1B-1-52. N.J.S.A. 30:1B-6 sets forth

> The commissioner, as administrator and chief executive officer of the department, shall:
>
>   . . . .
>
> e. Formulate, adopt, issue and promulgate, in the name of the department such rules and regulations for the efficient conduct of the work and general administration of the department, the institutions or noninstitutional agencies within its jurisdiction, its officers and employees as may be authorized by law;
>
>   . . . .
>
> g. Determine all matters of policy and regulate the administration of the institutions or noninstitutional

13

agencies within his jurisdiction, correct and adjust the same so that each shall function as an integral part of a general system. The rules, regulations, orders and directions promulgated by the commissioner for this purpose shall be accepted and enforced by the executive having charge of any institution or group of institutions or noninstitutional agencies or any phase of the work within the jurisdiction of the department . . . .

## A.

OPRA mandates the procedure to be followed when a government agency denies a record request in N.J.S.A. 47:1A-5, setting forth

A custodian shall promptly comply with a request to inspect, examine, copy, or provide a copy of a government record. If the custodian is unable to comply with a request for access, the custodian shall indicate the specific basis therefor on the request form and promptly return it to the requestor. The custodian shall sign and date the form and provide the requestor with a copy thereof . . . . If a request for access to a government record would substantially disrupt agency operations, the custodian may deny access to the record after informing the requestor of the potential disruption to agency operations and attempting to reach a reasonable solution with the requestor that accommodates the interests of the requestor and the agency.

[N.J.S.A. 47:1A-5(g).]

When an OPRA request is denied, the burden is placed upon the custodian of the record to state the "specific basis" for denial. Newark Morning Ledger Co.

14

v. New Jersey Sports & Exposition Auth., 423 N.J. Super. 140, 162 (App. Div. 2011).

Defendants properly responded to plaintiff's Part A request by providing plaintiff with the Legal Access Program government record in effect as of plaintiff's OPRA request date. Pursuant to Falvey's undisputed certification, the Legal Access Program is in fact the Legal Access Plan required under N.J.A.C. 10A:6-2.15. The Legal Access Program contains information to facilitate inmate access to the courts and law library. We are unpersuaded that plaintiff's reference to a lengthier government record with an effective date of May 9, 1996, revised May 1, 2007, creates a factual issue as to whether the proper government record was provided in response to plaintiff's Part A request. The confidential IMP titled "Inmate Legal Access" is a separate internal government record designated for the sole use of the correctional police staff which is exempt from disclosure under OPRA.

Defendants' response was not a denial requiring explanation pursuant to N.J.S.A. 47:1A-5(g) since the Legal Access Program provided to plaintiff is in fact the Legal Access Plan requested by plaintiff in his OPRA request. N.J.S.A. 47:1A-5(g) does not require the government agency to provide any explanation when it complies with a request for access under OPRA; the statutorily-

mandated explanation is only required where there is a denial. Thus, we conclude the trial court incorrectly found that defendants violated OPRA because they were not required to explain the response to plaintiff's Part A request. We reverse and vacate the trial court's finding that defendants violated OPRA.

B.

We discern no error with the trial court's conclusion that defendants properly denied plaintiff's Part B request as exempt under OPRA since plaintiff requested internal management procedures, which are protected from public access from OPRA based on the DOC's regulatory authority.

N.J.A.C. 10A:22–2.3 includes certain DOC records which "shall not be considered government records subject to public access pursuant to N.J.S.A. 47:1A-1 et. seq." N.J.A.C. 10A:22-2.3 (referring to OPRA). The relevant part of the DOC regulation, promulgated pursuant to N.J.S.A. 47:1A-9(a) and N.J.S.A. 30:1B-6(e) and (g), states

> (a) In addition to records designated as confidential pursuant to the provisions at N.J.S.A. 47:1A-1, et. seq., any other law, rule promulgated pursuant to the authority of any statute or Executive Order of the Governor, resolution of both houses of the Legislature, Executive Order of the Governor, Rules of Court, or any Federal law, Federal regulation, or Federal order, the following records shall not be considered

16

government records subject to public access pursuant to N.J.S.A. 47:1A–1 et. seq.;

. . . .

9. All internal management procedures, or any portion thereof, including any portions of those procedures and/or any indexes or lists identifying the procedures related to the following: safety and security measures, inmate movement, staffing, investigative techniques, contraband detection, intelligence gathering techniques, structural or physical plant designs, surveillance techniques, and search techniques . . . .

[N.J.A.C. 10A:22-2.3(a).]

The IMP at issue here is exempt under N.J.A.C. 10A:6-2.23(a)(9) because it reflects security measures to be implemented within the NJSP. Thus, we affirm the trial court's finding that defendants did not violate OPRA with respect to its response to plaintiff's Part B request.

C.

We are unpersuaded that plaintiff's Part B and C requests sufficiently identified government records that could be provided without conducting research requesting the subjective exercise of judgment, a task not required to be undertaken by the DOC to comply with OPRA.

Under prevailing law, in order to be deemed a "government record" as defined by N.J.S.A. 47:1A-1.1, the document must not be subject to any

17

exemptions pursuant to N.J.S.A. 47:1A-9. The third limitation is that every record request must identify with reasonable clarity those documents that the requestor seeks. See Burke v. Brandes, 429 N.J. Super. 169, 174 (App. Div. 2012). This court reasoned the "exact definition of an impermissibly overly broad request is abstract." Doe v. Rutgers State Univ. of New Jersey, 466 N.J. Super. 14, 27 (App. Div. 2021). "Courts have found requests that require a custodian to exercise his discretion, survey employees, or undertake research to determine whether a record is responsive are overly broad and not encompassed by OPRA." Ibid.

OPRA allows "requests for records, not requests for information." Burke, 429 N.J. Super. at 174 (citing Bent, 381 N.J. Super. at 37). OPRA "is not intended as a research tool . . . to force government officials to identify and siphon useful information." Bent, 381 N.J. Super. at 37 (citing MAG Ent., LLC, 375 N.J. Super. at 546). Simply stated, if an OPRA request slides over into the realm of information gathering, as opposed to record gathering, the custodian of the government records is not required under OPRA to supply access to the information requested.

The Supreme Court of New Jersey in Simmons recently expanded on the information versus record gathering distinction, particularly focusing on what

would be considered "information gathering," under OPRA, explaining "the request should not require the records custodian to undertake a subjective analysis to understand the nature of the request. Seeking particular information from the custodian is permissible; expecting the custodian to do research is not." Simmons, 247 N.J. at 43 (citing Paff, 229 N.J. at 355). The Court concluded that to tip the OPRA request into impermissible information gathering, the request would "require the record custodian to exercise subjective judgment in determining which records must be produced." Ibid. See also New Jersey Builders Ass'n v. New Jersey Council on Affordable Hous., 390 N.J. Super. 166 (App. Div. 2007); Bent, 381 N.J. Super. at 40 (concluding the plaintiff's OPRA's request was open-ended and required the agency to conduct impermissible analysis, which it was under no obligation to provide); MAG Ent., LLC, 375 N.J. Super. at 547 (noting the plaintiff was not specific enough in the OPRA request because the plaintiff "sought information regarding a municipality's liability settlements" without requesting any particular record).

We are unpersuaded by plaintiff's argument that the Part B and C requests contained the required specificity and determine the DOC's denial was proper because "they do not adequately identify a particular government record(s) sought." The record supports the DOC's assertion that Falvey and other DOC

19

employees would have to engage in impermissible research, or a subjective analysis, which is not required under OPRA. Falvey certified that when he conducted a search related to plaintiff's Part B request, he "identified approximately 500 IMPs created and revised by the [DOC] during that time" with no additional way of locating responsive documents other than reviewing the contents of each IMP issued during that time period and comparing it to the [Executive Order] listed in the OPRA request." Similarly, Nardelli certified that complying with plaintiff's Part C requests would yield "several hundred, if not thousands, of documents," related to the DOC's COVID-19 response which "would require a subjective review of each and every page of these hundreds, if not thousands, of pages to determine whether it addresses those issues named."

Because we find that plaintiff did not prevail on any portion of his OPRA complaint, he is not a prevailing party entitled to an award of fees under N.J.S.A. 47:1A-6.

Any arguments not addressed in this decision are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed in part. Reversed and vacated in part.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION