SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Baffi Simmons v. Wendy Mercado (A-18-20) (084695)**

**Argued March 31, 2021 -- Decided June 17, 2021**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this appeal, the Court considers whether a records request for complaint-summonses from a municipal police department is proper under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. The key question is whether the complaint-summonses -- electronic records populated with information by local police officers but stored on Judiciary servers -- are the police department's government records under OPRA and, if so, whether the records request at issue here was sufficiently narrow.

Plaintiffs Baffi Simmons and the African American Data and Research Institute (collectively, AADARI) submitted a request under OPRA to defendants Millville City Clerk Wendy Mercado, the City of Millville, and the City of Millville Police Department (collectively, MPD) for complaint-summonses, known as CDR-1s, for certain classes of drug-related offenses. Specifically, AADARI requested copies of the following four categories of documents prepared by MPD from January 2017 onward: (1) driving while intoxicated/driving under the influence (DWI/DUI) complaints and summonses; (2) drug possession complaints and summonses; (3) MPD's "Arrest Listings"; and (4) drug paraphernalia complaints and summonses. AADARI requested those records as part of a comparative data analysis on the subject of disparate treatment in the administration and enforcement of marijuana and other drug-related offenses in New Jersey.

In response to AADARI's OPRA request, MPD provided documents responsive to category 3 and advised AADARI to request the other three categories of items from the Millville Municipal Court. AADARI filed a complaint and an order to show cause, after which MPD provided AADARI documents responsive to category 1. So when the parties appeared before the trial court on the order to show cause, the only outstanding requests were the documents in categories 2 and 4 -- the drug-related complaints and summonses.

The trial court ruled in favor of AADARI, rejecting MPD's claims that it did not need to produce the pertinent records because MPD did not maintain them. The court also found that the records request did not require MPD to conduct research and therefore did not go beyond OPRA's scope.

1

The Appellate Division reversed, finding that the requested records are in the custody of the Judiciary and that AADARI must therefore direct its records request to the Judiciary, not MPD. 464 N.J. Super. 77, 79, 84 (App. Div. 2020). The appellate court did not address whether AADARI's request would require research. Id. at 84.

The Court granted AADARI's petition for certification. 244 N.J. 342 (2020).

**HELD:** Because MPD officers create the information contained in the CDR-1s, the CDR-1s fall well within OPRA's definition of a government record. Further, AADARI's records request is narrowly tailored and would not constitute research beyond OPRA's scope.

1. New Jersey boasts of a long and proud tradition of openness and hostility to secrecy in government. OPRA was enacted to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process. To effectuate its mission to make government records "readily accessible" to the state's citizens, OPRA substantively provides that "all government records shall be subject to public access unless exempt," N.J.S.A. 47:1A-1, and it places on the government the burden of establishing an exemption, N.J.S.A. 47:1A-6. Although OPRA favors broad public access to government records, it is not intended to be a research tool that litigants may use to force government officials to identify and siphon useful information. Thus, to prompt disclosure under OPRA, requests for information must be properly circumscribed. (pp. 15-17)

2. In furtherance of OPRA's goal of transparency and public access to government records, the Legislature broadly defines a "government record" subject to OPRA to include "information stored or maintained electronically . . . that has been made, maintained or kept on file in the course of his or its official business by any officer, commission, agency, or authority of the State or of any political subdivision thereof." N.J.S.A. 47:1A-1.1 (emphases added). "Information" is the key word. Applying those principles to the present case, and bearing in mind OPRA's goals, it is evident that the CDR-1s sought in this matter are government records subject to disclosure by MPD under OPRA. (pp. 17-18)

3. MPD's argument that members of the Judiciary, not law enforcement officers, "make" the CDR-1 forms obscures the nature of the information being sought here. AADARI is not seeking blank forms that provide zero information regarding arrests made by MPD. It is the substantive information regarding arrests used to populate the CDR-1s that is at issue here, and that information is inputted by MPD and only MPD. The CDR-1 form developed by the Judiciary is nothing but an empty shell until law enforcement officers, in the course of their official business, make that shell into an official government document by inputting the information that is sought in this case. (pp. 18-19)

2

4.  Further, MPD's argument that it is not obligated to produce the CDR-1s because it does not "maintain" the records does not square with the provision that, if a government official makes, maintains, or keeps on file electronic information in the course of his or her official business, it is a "government record" subject to OPRA.  See N.J.S.A. 47:1A-1.1.  The use of "or" plainly indicates that any of those three listed actions is sufficient to satisfy the statutory definition.  Thus, regardless of who maintains the files, the fact that MPD "makes" the CDR-1s means that it can be called upon to disclose those government records.  Nothing in the text of OPRA or Rule 1:38 or the Court's jurisprudence suggests that information cannot be both a court record and a government record.  Indeed, the language of the statute that defines a government record as one that has been "made, maintained, or kept on file" itself suggests the possibility that different government entities, working cooperatively, could be simultaneous custodians of the same information.  The statutory language presupposes that there may be more than one proper place where a requestor can submit an OPRA request.  That the Judiciary might maintain on its servers the information that MPD made does not absolve MPD of its obligation to produce that information pursuant to a proper OPRA request made to MPD.  (pp. 19-22)

5.  The Court therefore turns to MPD's argument that the request at issue here was not a proper request for OPRA purposes because it required research.  In Paff v. Galloway Township, the Court explained the proper parameters of OPRA requests, stating that "[a] records request must be well defined so that the custodian knows precisely what records are sought.  The request should not require the records custodian to undertake a subjective analysis to understand the nature of the request.  Seeking particular information from the custodian is permissible; expecting the custodian to do research is not."  229 N.J. 340, 355 (2017).  The Court reviews MAG Entertainment, LLC v. Division of Alcoholic Beverage Control, 375 N.J. Super. 534 (App. Div. 2005), in which the Appellate Division found a request requiring research to be beyond OPRA's statutory ambit, and Paff, in which the Court found that the challenged request did not require research.  The distinction between a research and non-research request lies with whether the plaintiff's request demands the government agency engage in analysis or the exercise of judgment in identifying responsive records.  (pp. 22-25)

6. The Court explains why AADARI's records request is distinguishable from the request at issue in MAG and is instead akin to the permissible request in Paff.  The request was well within OPRA's scope and does not require research by MPD.  The Court therefore reinstates the trial court's order granting AADARI's OPRA request.  MPD must comply with the trial court order and provide the requested documents to AADARI within five business days of the filing of the Court's opinion.  (pp. 25-27)

**REVERSED.  The order of the trial court is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.**

3

SUPREME COURT OF NEW JERSEY

A-18 September Term 2020

084695

Baffi Simmons and
African American Data
and Research Institute
(AADARI),

Plaintiffs-Appellants,

v.

Wendy Mercado, City of
Millville, and City of
Millville Police Department,

Defendants-Respondents.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
464 N.J. Super. 77 (App. Div. 2020).

| Argued | Decided |
| --- | --- |
| March 31, 2021 | June 17, 2021 |

Rotimi A. Owoh argued the cause for appellants (Rotimi
A. Owoh, on the brief).

Brock D. Russell argued the cause for respondents
(Brock D. Russell, on the brief).

Karen Thompson argued the cause for amicus curiae
American Civil Liberties Union of New Jersey (American
Civil Liberties Union of New Jersey Foundation,
attorneys; Karen Thompson, Alexander Shalom, and
Jeanne LoCicero, on the brief).

1

Robert E. Levy argued the cause for amici curiae Adelinny Plaza, Town of West New York Police Department, and Town of West New York (Scarinci Hollenbeck, attorneys; Robert E. Levy, of counsel and on the brief, and Jorge R. de Armas and Kevin M. Foltmer, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

In this appeal, the Court considers whether a records request for complaint-summonses from a municipal police department is proper under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13. The key question is whether the complaint-summonses -- electronic records populated with information by local police officers but stored on Judiciary servers -- are the police department's government records under OPRA. If so, we must also consider whether the records request was sufficiently narrow.

Plaintiffs Baffi Simmons and the African American Data and Research Institute (collectively, AADARI) submitted a request under OPRA to defendants Millville City Clerk Wendy Mercado, the City of Millville, and the City of Millville Police Department (collectively, MPD) for complaint-summonses, known as CDR-1s, for certain classes of drug-related offenses. MPD denied the request, explaining that such records could only be obtained from the Judiciary pursuant to Rule 1:38 and that, even if MPD could access

2

the records, such a request was overly broad and would require research beyond the scope of OPRA.

The trial court ordered MPD to produce the CDR-1s, emphasizing that although MPD did not maintain the records, it was still required to produce them because MPD officers input the information to make the CDR-1s and had access to them. The trial court further found that the request did not require research, as it only required MPD to observe whether a designated offense was drug-related or not.

The Appellate Division reversed, agreeing with MPD that the records were not in its possession. The court acknowledged that police officers input information to trigger the creation of CDR-1s but determined that, because the final product is maintained by the Judiciary, MPD was not obligated to produce the items requested. Finding that the CDR-1s were not MPD's "government records" under OPRA, the court declined to address whether AADARI's request would require research.

Because MPD officers create the information contained in the CDR-1s, we find that they fall well within OPRA's definition of a government record. We further find that AADARI's records request is narrowly tailored and would not constitute research beyond OPRA's scope. Accordingly, we reverse and

3

reinstate the trial court's order mandating that MPD produce the requested records to AADARI.

## I.

## A.

Pursuant to Rule 3:4-1(a)(1), after making an arrest without a warrant, law enforcement officers are required to immediately prepare a complaint setting forth the relevant facts and circumstances in support of probable cause for the arrest. As part of the State's compliance with the Criminal Justice Reform Act, N.J.S.A. 2A:162-15 to -26, the Attorney General has directed local police departments to utilize the electronic Complaint Disposition Record system (eCDR) to expedite the process of generating such complaints. Attorney General Law Enforcement Directive No. 2016-06 (Oct. 11, 2016). Using the eCDR system, law enforcement officers input into a blank electronic form information about the arrest, including the offense allegedly committed, the arrestee's biographical information, and a description of the facts.

Once the pertinent information is entered, the eCDR system allows law enforcement officers to electronically submit the form to the court. No judge or member of the Judiciary plays a role in the inputting or submission of information by law enforcement officers through the eCDR system. At the point at which a law enforcement officer is submitting the form, an arrest has

4

already been made without any involvement by a judicial officer. The form that the law enforcement officer submits becomes part of a CDR-1 complaint-summons or a complaint-warrant, known as a CDR-2. R. 3:3-1. For low-level offenses, law enforcement officers may issue the CDR-1 to the defendant without any judicial input. R. 3:3-1(b)(2). For CDR-2s, once the form is submitted to the court, an assigned judge makes a probable cause determination. The information contained in those CDR-1 and CDR-2 forms is stored on Judiciary servers, but because law enforcement officers enter the substantive information about the arrests in the forms, local police departments have access to the forms in the system.

The forms at issue in the present case are CDR-1s, complaint-summonses. CDR-1s are typically issued for low-level offenses that do not involve defendants who pose a risk warranting pretrial detention. Such defendants are always released, and the complaint-summons directs the defendant to appear in court on a specified date.

Prior to eCDR, the Judiciary manually stored paper files and records, and police departments retained copies of complaint forms in their own records departments. N.J. State Bar Ass'n, Capitol Report, 223 N.J.L.J. 16 (June 5, 2017). Under statewide document retention schedules, even with eCDR it is envisioned that police departments will maintain their own copies of CDR-1s

5

for thirty days after disposition of the matter.  See Div. of Archives & Record

Mgmt., Municipal Police Departments:  Records Retention & Disposition

Schedule, https://www.nj.gov/treasury/revenue/rms/pdf/m900000.pdf.

B.

On September 10, 2018, a representative from AADARI emailed a

records request pursuant to OPRA[1] to MPD.  AADARI requested copies of the

following four categories of documents prepared by MPD from January 2017

onward:  (1) driving while intoxicated/driving under the influence (DWI/DUI)

complaints and summonses; (2) drug possession complaints and summonses;

(3) MPD's "Arrest Listings"; and (4) drug paraphernalia complaints and

summonses.  AADARI requested those records as part of a comparative data

analysis on the subject of disparate treatment in the administration and

enforcement of marijuana and other drug-related offenses in New Jersey.

In response to AADARI's OPRA request, on September 13, 2018, MPD

provided documents responsive to category 3, the arrest listings.  MPD did not

provide any documents responsive to categories 1, 2, or 4, the DUI and drug-

---

[1]  The original records request was also made pursuant to the common law
right of access.  The parties, however, never litigated the applicability of the
common law right of access in this case.

related complaints and summonses, and advised AADARI to request those items from the Millville Municipal Court.

On October 2, 2018, AADARI filed a complaint and an order to show cause against MPD, asking for a court order to provide AADARI with immediate access to the requested records pursuant to OPRA. After AADARI filed the complaint and order to show cause, MPD, "in an abundance of caution," provided AADARI documents responsive to category 1, the DUI complaints and summonses, although MPD continued to maintain that those documents are court records. So when the parties appeared before the trial court on the order to show cause, the only outstanding requests were the documents in categories 2 and 4 -- the drug-related complaints and summonses.

At oral argument on November 13, 2018, MPD alleged that it did not have the requested complaints in categories 2 and 4 and submitted an affidavit from an MPD lieutenant stating that the police department does not have access to those records. Specifically, MPD contended (1) it was not the custodian of the eCDR records, so AADARI would need to request the records from the municipal court, and (2) even if MPD had access to the records, it could not search by complaint type and, thus, AADARI's request was overly broad.

7

AADARI disputed MPD's lack of access to eCDR, asserting that each local police department had a password to access eCDR and "the government is [e]ssentially sending them paper copies.  They are stored as a PDF on [an] electronic system," from which MPD could print the complaints.  AADARI further emphasized that just because other government officials, including prosecutors and public defenders, have access to the system, that did not render MPD exempt from its OPRA obligations.

As to MPD's ability to conduct a specific records search, counsel for AADARI asserted that MPD could use the first and last names of arrestees to narrow the group of individuals with relevant search results.  By using the charge numbers included on the arrest listings, AADARI explained, MPD would be able to look up the individual complaints of everyone MPD arrested for the class of drug offenses AADARI requested.  AADARI represents that it identified 162 cases from MPD's arrest listings that corresponded to the requested CDR-1s in categories 2 and 4.

The trial court ruled in favor of AADARI, rejecting MPD's claims that it did not need to produce the pertinent records because MPD did not maintain them.  The court found that "the issue of whether or not they maintain [the records] . . . is not a relevant issue for OPRA," under the statute's definition of a government record, N.J.S.A. 47:1A-1.1.  The judge emphasized that the

8

language of the definition included any record "that has been made, maintained, or kept [] on file . . . in the course of . . . official business" (emphasis added), and that there was no dispute here that MPD made the documents in its official business.

Relying on Burnett v. County of Gloucester, 415 N.J. Super. 506 (App. Div. 2010), the court held that "even though you don't maintain [a record], if it's a governmental record you still have an obligation to turn it over." Otherwise, the court cautioned, "a governmental agency seeking to protect its records from scrutiny could simply relinquish possession to third parties thereby thwarting the policy of transparency that underlies OPRA." Thus, the court held that MPD was in violation of OPRA for failing to turn over any CDR-1s it maintained for the thirty-day period mandated by State document retention policies. The court further found that AADARI was entitled to the rest of the requested records but allowed MPD an additional two weeks to submit proof that it did not have the ability to access the complaints.

At a subsequent hearing on December 18, 2018, MPD conceded that "[t]he police department does have access [to eCDR] -- to be clear it's not disputed." However, MPD relied upon MAG Entertainment, LLC v. Division of Alcoholic Beverage Control, 375 N.J. Super. 534, 540 (App. Div. 2005), and continued to assert that AADARI's records request would constitute

9

research for MPD and would go beyond OPRA's scope. The court disagreed, finding MAG to be distinguishable because there, the records custodian was asked to read through individual documents to interpret whether they fell into the category of information that the requestor was seeking. By contrast, here, "the only thing that's requested is for the custodian of records to see what the charge is," which "[d]oesn't require any thinking, doesn't require any interpretation." The decision in favor of AADARI was reduced to a formal order on January 3, 2019.[2]

### C.

MPD appealed from the order and the Appellate Division reversed. Simmons v. Mercado, 464 N.J. Super. 77, 79 (App. Div. 2020). The court agreed with MPD that it was not obligated to produce the requested records under OPRA because "the manner in which the requested complaint-summonses were created demonstrates that they are not government records in their possession but are records in the custody of the judiciary." Id. at 84. Although local police "input the information that triggers the process" of

---

[2] Thereafter, MPD filed a motion for reconsideration, arguing that complaints and summonses are pleadings within the scope of Rule 1:38 and are not subject to OPRA. The court denied the motion, holding that "even if [the CDR-1s] are court records[,] it doesn't mean that the requestor has to go through the court" to obtain them. The court emphasized "[t]here's no exceptions under OPRA . . . if it's available through the court from some other source."

generating a CDR-1, the fact that "the final product is governed by other forces and the resulting product is maintained by others" meant, according to the court, that a CDR-1 "is, in reality, not a government record maintained by the municipality but a record maintained by the judiciary." Ibid. The court highlighted that judicial officers have the discretion to decide whether the eCDR system will generate a CDR-1 (summons) or a CDR-2 (warrant) based upon the data input by police. Id. at 85. In the court's view, Rule 3:4-1(a)(1) did not require a different result because it does not reveal whether a complaint-summons "constitutes a municipal record or a judiciary record." Id. at 85. The court further observed that the fact that MPD has access to eCDR "does not alter the fact that the record is maintained by the judiciary." Id. at 86.

Although the Appellate Division recounted caselaw to highlight that OPRA does not require records custodians to conduct research, it ultimately did not address the question as to whether AADARI's request would require research, because "[t]hat presupposes, of course, that the requested record is a 'government record.'" Id. at 84. Finding that the requested records were not government records subject to OPRA, the court concluded that AADARI must direct its records request to the Judiciary, not MPD. Id. at 86.

11

We granted AADARI's petition for certification.  244 N.J. 342 (2020). We also granted leave to participate as amici curiae to the American Civil Liberties Union of New Jersey (ACLU) and to the Town of West New York, Town of West New York Police Department, and the West New York Deputy Clerk Adelinny Plaza (collectively, West New York).

## II.

## A.

AADARI contends that the trial court properly ordered MPD to produce the requested CDR-1s because MPD has direct access to those summonses and the ability to retrieve and print them from eCDR.  Although AADARI concedes that eCDR is maintained by the Judiciary, it argues that the public could easily gain access to CDR-1s from police departments before they were computerized and that technological advancements should not diminish the right to access government records.  To find otherwise, AADARI submits, would run counter to the purpose of OPRA:  to grant quick and expeditious access to public records as part of promoting transparency in government. AADARI further asserts that its request for the CDR-1s is a valid and identifiable request for public records in accordance with Burke v. Brandes, 429 N.J. Super. 169 (App. Div. 2012), and that no research is required for MPD to produce the requested records.

Amicus ACLU, like AADARI, urges this Court to reverse the Appellate Division, arguing that its findings are "not supported by the statutory text or case law" and that its decision "creates unjustifiable limitations on government transparency obligations by fashioning arbitrary boundaries around the public's access to government records." The ACLU asserts that the CDR-1s are MPD's government records under OPRA because its officers generate the electronic information that is sought by AADARI and that the Appellate Division erred by relying upon where the document is stored. Amicus also warns that the Appellate Division's decision would burden judicial resources "by re-assigning to the judiciary the work of individual police departments . . . forcing the judiciary to dispense aggregated data from nearly 200 municipal police departments across the state." The ACLU asserts that this would stymie the purpose of OPRA, which is "to maximize public knowledge about public affairs so as to build an informed populace and to minimize the evils inherent in a secluded process."

### B.

MPD asks this Court to affirm the Appellate Division decision. It claims that it does not own or maintain the CDR-1s at issue, emphasizing that although officers initiate the process of generating a complaint by inputting information into an electronic form in eCDR, the Judiciary has already

13

completed preprinted fields and the decision of whether to issue a CDR-1 or CDR-2 is made by a judicial officer. Because the information filled in by officers is "deliberative" and maintained on Judiciary servers, MPD contends that CDR-1s are not its government records under OPRA. MPD also asserts that CDR-1s fall within the definition of court records under Rule 1:38-2(a)(4) and that AADARI should therefore request such pleadings from the Judiciary under the framework of Rule 1:38. A ruling to the contrary, according to MPD, would contravene its understanding that "OPRA does not apply to the Judiciary which is a separate and distinct branch of government under the State Constitution."

Amicus West New York largely echoes MPD's arguments. West New York asserts that municipal clerks are not required under OPRA "to take court records from Judiciary files without authorization, in violation of Judiciary Rules and policy, in order to provide them to an OPRA requestor, all under the threat of serious sanction." Like MPD, West New York argues that the CDR-1s are court records deliberately exempted from OPRA under the New Jersey Constitution and separation of power principles. West New York disputes that mere access is insufficient to create "legal access" to the requested records and contends that a ruling in favor of AADARI would create a scenario where any

14

government office could be required to produce otherwise non-discoverable court records simply because they have access to them.

### III.

Our state boasts "of a long and proud 'tradition[] of openness and hostility to secrecy in government.'" Educ. Law Ctr. v. Dep't of Educ., 198 N.J. 274, 283 (2009) (alteration in original) (quoting N. Jersey Newspapers v. Passaic Cnty. Bd. of Chosen Freeholders, 127 N.J. 9, 16 (1992)). To further enhance government transparency, OPRA was enacted "to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Mason v. City of Hoboken, 196 N.J. 51, 64 (2008) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). The Legislature passed OPRA in 2001 to replace the then-existing Right to Know Law, L. 1963, c. 73, which "did not keep pace with the vast technological advances that changed the ways citizens and public officials communicate and store information." Paff v. Galloway Township, 229 N.J. 340, 352 (2017). To effectuate its mission "to make government records 'readily accessible' to the state's citizens," OPRA "substantively provides that 'all government records shall be subject to public access unless exempt,' N.J.S.A. 47:1A-1, and it

places on the government the burden of establishing an exemption, N.J.S.A. 47:1A-6." Gilleran v. Township of Bloomfield, 227 N.J. 159, 170 (2016).

Although OPRA favors broad public access to government records, it is "not intended [to be] a research tool [that] litigants may use to force government officials to identify and siphon useful information." In re N.J. Firemen's Ass'n Obligation, 230 N.J. 258, 276 (2017) (alterations in original) (quoting MAG, 375 N.J. Super. at 546). Thus, to prompt disclosure under OPRA, requests for information must be properly circumscribed. Paff, 229 N.J. at 355.

In this appeal, we consider, first, whether the requested CDR-1s are government records subject to disclosure under OPRA and, second, whether the requests were sufficiently circumscribed. "[D]eterminations about the applicability of OPRA and its exemptions are legal conclusions and are therefore subject to de novo review." In re N.J. Firemen's Ass'n Obligation, 230 N.J. at 273-74 (citations omitted). "[T]herefore, we owe no deference to the interpretive conclusions reached by either the trial court or the Appellate Division." Paff, 229 N.J. at 351. In our review, we are mindful of the Legislature's direction that "OPRA 'shall be construed in favor of the public's right of access'" and "imposes on public agencies 'the burden of proving that the denial of access is authorized by law.'" Paff v. Ocean Cnty. Prosecutor's

<u>Off.</u>, 235 N.J. 1, 16 (2018) (first quoting N.J.S.A. 47:1A-1; and then quoting N.J.S.A. 47:1A-6).

IV.

A.

In determining whether certain information falls within OPRA's scope, the plain language of the statute is our best guide.  In furtherance of OPRA's goal of transparency and public access to government records, the Legislature broadly defines a "government record" subject to OPRA as

> any paper, written or printed book, document, drawing, map, plan, photograph, microfilm, data processed or image processed document, <u>information stored or maintained electronically</u> or by sound-recording in a similar device, or any copy thereof, <u>that has been made, maintained or kept on file</u> in the course of his or its official business by any officer, commission, agency, or authority of the State or of any political subdivision thereof . . . .
>
> [N.J.S.A. 47:1A-1.1 (emphases added).]

In <u>Paff</u>, we clarified that this definition includes electronic records, as "[t]he Legislature apparently decided against defining government record[s] as documents or files stored or maintained electronically.  'Information' is the key word."  229 N.J. at 353.  We noted that "[t]his logical conclusion flows directly from OPRA's language," <u>ibid.</u>, and that a contrary position could not "be squared with OPRA's plain language or its objectives in dealing with

17

electronically stored information," id. at 356.  Applying those principles to the present case, and bearing in mind OPRA's goals, it is evident that the CDR-1s sought in this matter are government records subject to disclosure by MPD under OPRA.

MPD's argument that members of the Judiciary, not law enforcement officers, "make" the CDR-1 forms completely obscures the nature of the information being sought here.  AADARI is not seeking blank forms that provide zero information regarding arrests made by MPD.  We recognize that the Judiciary developed the CDR-1 template, or the electronic shell that categorizes the substantive information that must be entered by law enforcement officers.  But it is the substantive information regarding arrests used to populate the CDR-1s that is at issue here, and that information is inputted by MPD and only MPD.  No judicial officer or judge plays a role in creating the document or inputting any information into the CDR-1s at the moment the law enforcement officer fills out the form and submits it to the Judiciary.  That is what AADARI is seeking here -- the actual completed official document that contains details of an arrest, probable cause, and an arrestee's biographical information.

As we made clear in Paff, and continue to emphasize, "'[i]nformation' is the key word" for purposes of OPRA.  229 N.J. at 353.  The CDR-1 form

18

developed by the Judiciary is nothing but an empty shell until law enforcement officers, in the course of their official business, make that shell into an official government document by inputting the information that is sought in this case. See Burnett, 415 N.J. Super. at 517 (finding that the requested documents were government records under OPRA because they "were 'made' by or on behalf of the Board in the course of its official business"). Pursuant to OPRA's definition of "government record," there is no question that CDR-1s are documents that are made in the course of a law enforcement officer's official business. See N.J.S.A. 47:1A-1.1. Because MPD officers create the completed CDR-1s by populating the forms with the information necessary to generate a summons and submit it to the court, there is no question that the CDR-1s are government records subject to disclosure pursuant to OPRA.

MPD also argues that it is not obligated to produce the CDR-1s because it does not "maintain" the records. The Appellate Division, in line with that argument, found that the CDR-1s were not government records because although local police input the information, "the resulting product is maintained by others." 464 N.J. Super. at 84. But that interpretation of what constitutes a government record does not square with the explicit language in OPRA.

19

Any reliance here on the maintenance of the records is misplaced because it completely ignores the fact that MPD officers "make" the information by inputting substantive data about the arrests into eCDR, as noted above. The plain language of the statutory provision at issue here is clear: if a government official makes, maintains, or keeps on file electronic information in the course of his or her official business, it is a "government record" subject to OPRA. See N.J.S.A. 47:1A-1.1. The use of "or" plainly indicates that any of those three listed actions is sufficient to satisfy the statutory definition. See, e.g., State v. Frank, 445 N.J. Super. 98, 106 (App. Div. 2016) (noting that the word "or" in a statute generally indicates an alternative and that, "where items in a list are joined by a comma, with an "or" preceding the last item, the items are disjunctive, meaning distinct and separate from each other" (alterations and quotations omitted)). Thus, regardless of who maintains the files, the fact that MPD "makes" the CDR-1s means that it can be called upon to disclose those government records.

MPD also appears to argue that, even if it had a disclosure obligation as to the CDR-1s, its obligations under OPRA are preempted because the CDR-

1s, once submitted, become court records that can be obtained only from the Judiciary pursuant to Rule 1:38.[3]

Certainly, once the CDR-1 is created by law enforcement and submitted to the court, the document falls under Rule 1:38-2's definition of a court record in that it is "information maintained by a court in any form in connection with a case or judicial proceeding." But nothing in the text of OPRA or Rule 1:38 or our jurisprudence suggests that information cannot be both a court record and a government record. Indeed, the language of the statute that defines a government record as one that has been "made, maintained, or kept on file" itself suggests the possibility that different government entities, working cooperatively, could be simultaneous custodians of the same information. See N.J.S.A. 47:1A-1.1 (emphasis added). The statutory language presupposes that there may be more than one proper place where a requestor can submit an OPRA request.

---

[3] Rule 1:38 governs public access to court records, which include "any information maintained by a court in any form in connection with a case or judicial proceeding." R. 1:38-2(a)(1). Court records also encompass "any information in a computerized case management system created or prepared by the court in connection with a case or judicial proceeding." Id. at -2(a)(4). Requests for municipal court records under Rule 1:38 must be directed to a "Municipal Court Director or Administrator." Id. at -10(a)(7). The Rule further lists numerous categories of court records that are excluded from public access. Id. at -3.

21

Moreover, the contention by MPD that because government records may be available elsewhere an agency can relinquish its obligations under OPRA runs counter to "the State's policy in favor of broad access to public records" embodied by OPRA. N. Jersey Media Grp., Inc. v. Township of Lyndhurst, 229 N.J. 541, 555 (2017). Were we to engraft upon OPRA an exception for when a government agency has created but no longer maintains a record, it would create a perverse incentive for officials to relinquish electronic records to a third party in order to prevent their public disclosure. That would conflict with OPRA's policy of government transparency and would ignore the fact that modern-day technological advancements have, in many cases, resulted in the possibility for there to be multiple concurrent or simultaneous custodians of the same electronic information. That the Judiciary might maintain on its servers the information that MPD made does not absolve MPD of its obligation to produce that information pursuant to a proper OPRA request made to MPD.

That brings us to MPD's argument that the request at issue here was not a proper request for OPRA purposes because it required research.

B.

In Paff, we explained the proper parameters of OPRA records requests as follows:

> A records request must be well defined so that the custodian knows precisely what records are sought.

22

> The request should not require the records custodian to undertake a subjective analysis to understand the nature of the request. Seeking particular information from the custodian is permissible; expecting the custodian to do research is not.
>
> [229 N.J. at 355.]

Thus, a records request must not be so broad as to require the record custodian to exercise subjective judgment in determining which records must be produced. See N.J. Builders Ass'n v. N.J. Council on Affordable Hous., 390 N.J. Super 166, 171-72 (App. Div. 2007) (finding that an OPRA request for "[a]ny and all documents and data which [were] relied upon, considered, reviewed, or otherwise utilized by any employee or staff member of COAH" was overly broad and did not specify the information sought (alterations in original)). To avoid submitting a broad request outside the scope of OPRA, the requestor must "describe[] the records sought with the requisite specificity and narrow[] the scope of the inquiry to a discrete and limited subject matter." Burke, 429 N.J. Super. at 177-78.

In MAG, the Appellate Division reviewed an order granting MAG Entertainment (MAG) a right under OPRA to obtain documents from the Division of Alcoholic Beverages Control (ABC). 375 N.J. Super. at 539. ABC had a pending enforcement action against MAG, and MAG was pursuing a selective enforcement defense. Ibid. To substantiate its defense, MAG filed

23

an OPRA request for all documents pertaining to past instances where ABC sought to revoke liquor licenses for certain alcohol-related criminal charges, but "MAG's request did not identify any specific case by name, date, docket number or any other citation." Id. at 539-40.

The Appellate Division reversed the order granting MAG's OPRA request, explaining that

> the request failed to identify with any specificity or particularity the governmental records sought. MAG provided neither names nor any identifiers other than a broad generic description of a brand or type of case prosecuted by the agency in the past. Such an open-ended demand required the Division's records custodian to manually search through all of the agency's files, analyze, compile and collate the information contained therein, and identify for MAG the cases relative to its selective enforcement defense in the . . . litigation. Further, once the cases were identified, the records custodian would then be required to evaluate, sort out, and determine the documents to be produced and those otherwise exempted.
>
> [Id. at 549.]

Accordingly, the court concluded that ABC "was asked to do the very research and investigation MAG needed to do in the administrative proceeding in order to establish a 'colorable claim' of selective enforcement," which was "decidedly outside [of OPRA's] statutory ambit." Id. at 549-50. The court held that OPRA does not encompass "[w]holesale requests for general

24

information to be analyzed, collated and compiled by the responding government entity." Id. at 549.

By contrast, in Paff, we held that a plaintiff's OPRA request did not require research. 229 N.J. at 356. There, Paff submitted an OPRA request to Galloway Township "for specific information in emails sent by the Township's Municipal Clerk and Chief of Police over a two-week period," seeking only information in the "sender," "recipient," "date," and "subject" fields. Id. at 343. We rejected the Township's analogy to MAG, emphasizing that

> [u]nlike the request in MAG, Paff circumscribed his request to a two-week period and identified the discrete information he sought. The records custodian did not have to make a subjective judgment to determine the nature of the information covered by the request. The custodian simply had to search for -- not research the identity of -- the records requested.
>
> [Id. at 356.]

Thus, the distinction between a research and non-research request lies with whether the plaintiff's request demands the government agency engage in analysis or "the exercise of judgment in identifying responsive records." Burke, 429 N.J. Super. at 177.

Here, MPD likens AADARI's records request to the request rejected in MAG, arguing that it would require research and was thus beyond the scope of OPRA. The trial court rejected that argument, finding that MPD does not need

25

to interpret any documents to determine whether they need to be produced. We agree.

We are not persuaded that AADARI's records request would require MPD to engage in any analysis to produce the requested CDR-1s. As AADARI has explained, because it already has MPD's arrest listings for the relevant time period, which include drug-related incidents, it has identified 162 cases that correspond to the requested CDR-1s. The arrest listings contain the first and last names of the offenders, their dates of birth, the dates of each incident, the incident numbers, and the specific offense charged -- in this case, drug possession. MPD merely needs to use any of those already-provided data points to retrieve the corresponding CDR-1s and produce them to AADARI. Such an exercise would not require any subjective judgment, only the objective activity of producing the CDR-1s referenced in the arrest listings.

MPD's reliance on MAG is misplaced. This is far from a case where the requestor did not provide anything more than a "broad generic description of a brand or type of case prosecuted by the agency in the past." See MAG, 375 N.J. Super. at 549. Rather, it is akin to the request in Paff, wherein the requestor "circumscribed his request to a two-week period and identified the discrete information he sought," 229 N.J. at 356, or Burke, where the request "was confined to a specific subject matter that was clearly and reasonably

26

described with sufficient identifying information," 429 N.J. Super. at 177.

Similar to those cases, we conclude that AADARI's request was well within

OPRA's scope and does not require research by MPD.

V.

For the reasons set forth above, we reverse the judgment of the

Appellate Division and reinstate the trial court's order granting AADARI's

OPRA request.  MPD must comply with the trial court order and provide the

requested documents to AADARI within five business days of the filing of this

opinion.


        CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN,
PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-
LOUIS's opinion.